Gerald A. Klein, P.C. – CA State Bar No. 107727
Brian M. Kelly – CA State Bar No. 292222
KLEIN & WILSON
A Partnership of Professional Corporations
4770 Von Karman Avenue
Newport Beach, California 92660
(949) 631-3300; Facsimile (949) 631-3703
klein@kleinandwilson.com; bkelly@kleinandwilson.com

Andrew R. Nelson – CA State Bar No. 214895
Kelly K. Pfeiffer – CA State Bar No. 223468
FORTIS LLP
650 Town Center Drive, Suite 1530
Costa Mesa, CA 92626
(714) 839-3800; Facsimile (714) 795-2995
anelson@fortislaw.com; kpfeiffer@fortislaw.com

John R. Sommer – CA State Bar No. 106355
17853 Santiago Blvd., Suite 107-160
Villa Park, California 92861
(949) 752-5344; Facsimile 949-752-5439
sommer@sommer.law

Attorneys for Plaintiff STUSSY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STUSSY, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>SHEIN; SHEIN DISTRIBUTION CORPORATION; ZOETOP BUSINESS CO. LIMITED; ROADGET BUSINESS PTE. LTD.; FASHION CHOICE PTE. LTD.; ROMWE,<br><br>   Defendants. | **CASE NO. 8:22-CV-00379 CJC (KESx)**<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114);**<br><br>**2. FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a);**<br><br>**3. FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))**<br><br>**4. INFRINGEMENT OF CALIFORNIA TRADEMARKS AND COUNTERFEITING;**<br><br>**5. INFRINGEMENT OF CALIFORNIA COMMON LAW TRADEMARKS;** |

**6. CALIFORNIA STATUTORY DILUTION;**

**7. UNFAIR COMPETITION AND UNFAIR PRACTICES (Cal. Bus. & Prof. Code §§ 17200-17208);**

**8. CONTRIBUTORY TRADEMARK INFRINGEMENT; and**

**9. VICARIOUS TRADEMARK INFRINGEMENT**

Plaintiff Stussy, Inc. ("Stussy"), by its attorneys, alleges as follows:

1.      This is an action for trademark infringement and counterfeiting of Stussy's famous, federally and state-registered STUSSY trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for federal trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of trademark infringement and counterfeiting, unfair competition, and dilution under the statutory and common laws of the State of California, all arising from the Defendants' unauthorized use of spurious designations identical to and/or substantially indistinguishable from Stussy's famous trademarks in connection with the manufacture, distribution, marketing, promotion, offering for sale, and/or sale of, without limitation, Defendants' counterfeit shirts, sweatshirts, jackets, jerseys, sandals, sneakers, and related items.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 as this action involves claims arising under the Lanham Act and substantially related claims for unfair competition. This Court has supplemental subject-matter jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because they are so related that they form part of the same case or controversy.

3.     As detailed more fully below, personal jurisdiction in this district is proper because, among other reasons, Defendants are registered to do business in, have a principal place of business in, and/or have solicited and conducted business in the State of California, thereby purposefully availing themselves of the privilege of acting in the State of California. Personal jurisdiction is also proper under California's long-arm statute, Cal. Civ. Proc. Code § 410.10, because Defendants regularly do or solicit business in California and do a substantial amount of business in California. This Court has personal jurisdiction over Defendants in that they are committing acts of infringement in the State of California in the Central District of California and in the Southern Division thereof or are committing such acts in conjunction with others with the knowledge or reasonable expectation that they would cause damage to a person therein.

4.     Venue for this action is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to the claims occurred in the Central District of California, including acts of infringement that occurred here and damage suffered here, and/or 28 U.S.C. § 1391(b)(3), in that one or more Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## PARTIES

5.     Stussy is a corporation duly organized and existing under the laws of the State of California, having its principal place of business within the Central District of California at 17426 Daimler Street, Irvine, California 92614.

6.     On information and belief, various people and business entities operate under an amorphous label of "Shein" which is an enterprise selling name brand knock offs on the internet. On information and belief, the "Shein" entities have knocked off and sold counterfeits of American household brands such as Levi Strauss, Oakley, PRL USA Holdings, Inc. (a subsidiary of Ralph Lauren Corporation), and Airwalk,

and now has sold counterfeits of Stussy products. On information and belief, this illegal enterprise has enriched the wrongdoers by more than a billion dollars over just the last several years.

7.   On information and belief, the Shein entities recognize the liability exposure for such obvious counterfeiting activities and, therefore, have gone to great lengths to disguise themselves so as to avoid liability for their wrongdoing. On information and belief, the Shein culprits create entities designed to allow the wrongdoers to avoid wrongdoing and challenge American jurisdiction over them.

8.   Upon information and belief, Shein Distribution Corporation ("SDC") is a Delaware corporation based in the Central District of California and working itself or with others in the creation, modification and operation of the US.SHEIN.COM and US.ROMWE.COM websites ("the Shein websites") and various "Shein" and "Romwe" mobile shopping applications ("the Shein mobile apps"). SDC was incorporated in May of 2021 and, as such, is a relatively new member of the "Shein" group of entities. Upon information and belief, SDC is or was one of the owners and/or operators of the Shein websites and/or Shein mobile apps, and/or the supplier of products to the Shein websites and/or Shein mobile apps, or is otherwise involved with the manufacture, sale, or distribution of infringing products as hereinafter averred. SDC is doing business in and committing the acts of infringement and other wrongful acts averred herein in the Central District of California and within the State of California, and is directing its activities towards persons in this state and knowingly causing damage to Stussy in  this state.

9.   Upon information and belief, Zoetop Business Co. Limited ("Zoetop") is a Hong Kong company that is or was doing business in the Central District of California and is, or at relevant times was, involved with the Shein websites and the Shein mobile apps. Upon information and belief, Zoetop is or was the owner and/or operator of the Shein websites and/or Shein mobile apps, and/or the supplier of products to the Shein websites and/or Shein mobile apps, or is or was otherwise

involved with, or working with others, in the manufacture, sale, or distribution of infringing products as hereinafter averred. Zoetop is, or at relevant times was, doing business in and committing the acts of infringement and other acts averred herein in the Central District of California and within the State of California, and is, or at relevant times was, directing its activities towards persons in this state and knowingly causing damage in this state.

10.     Upon information and belief, Stussy avers that Roadget Business Pte. Ltd. ("Roadget") is a Singapore company that is or was doing business in the Central District of California and is, or at relevant times was, involved with the Shein websites and the Shein mobile apps. Upon information and belief, Roadget is or was the owner and/or operator of the Shein websites and/or Shein mobile apps, and/or the supplier of products to the Shein websites and/or Shein mobile apps, or is or was otherwise involved with the manufacture, sale, or distribution of infringing products as hereinafter averred. Roadget is, or at relevant times was, doing business in and committing the acts of infringement and other acts averred herein in the Central District of California and within the State of California, and is, or at relevant times was, directing its activities towards persons in such state and knowingly causing damage in such state.

11.     Hereinafter all Defendants are collectively referred to as "Defendants" or "Shein."

12.     Upon information and belief, Defendants are commonly owned and managed and are engaging in a joint enterprise or conspiracy to commit the acts hereinafter averred. At all times mentioned herein, Defendants, and each of them, as joint venturers and co-conspirators, were authorized and empowered by each other to act, and did so act, as agents of each other, and all of the acts herein alleged to have been committed by them were done in the capacity of such agency. Specifically, the Defendants represent to prospective and actual customers through the Shein websites that "Shein" and "Romwe" each are a single worldwide entity. Each claim to have

"nearly 10,000 employees" and serve "more than 150 countries," however, Roadget and Zoetop do not appear to have employees or offices. On information and belief, Roadget is not located at its official address in Singapore, and Zoetop's "office" in Hong Kong is a "WeWork" shared facility. As such, these representations about the number of employees and the countries served can only be true if each Defendant is acting for the other. On the Shein websites, Defendants each represent that "We have operations in Singapore, Guangzhou **and Los Angeles**." Furthermore, each of the Defendants authorizes the other to act on its behalf in connection with various parts of the chain of distribution of the infringements and counterfeit products at issue in this case, such as steps in the procurement of the products, solicitation of the orders from customers, processing the orders, maintaining the personal data of their website users, and shipping and delivering the goods.

13.     Upon information and belief, each of the Defendants is and was an alter ego for each other, and for other entities who were involved in the wrongdoing at issue in this complaint and whose names are yet unknown. Despite diligent research, it appears there is no registered entity named "Shein"; however, on information and belief, Defendants have operated together under the name "Shein" and have been able to get away with trademark and copyright infringement for years by using empty corporate shells to serve as litigation targets. In addition to shamelessly stealing the intellectual property of others and prolifically creating cheap knock-offs at great profit for themselves, Defendants have purposely set up a situation where they obfuscate jurisdiction and hide behind multiple shell companies from various jurisdictions, in effect creating a corporate shell game. As one news article has reported, "The corporate structure of Chinese fast-fashion giant Shein is opaque and tax-optimized, and ownership is unclear. A multitude of brands make the group even less tangible." *Opaque and tax-optimised: Shein's Corporate Structure*, Public Eye, 2022, (www.PublicEye.ch); a true and correct copy of this article is attached as **Exhibit A**.

/ / /

Below is a chart wherein a reporter attempted to map out Shein's byzantine corporate structure:



Shein's corporate structure, as of October 2021; simplified, incomplete depiction based on publicly available information; errors are not excluded.

14.    Over the years, the company names Shein used in the United States to successfully own and/or operate the Shein websites and the Shein mobile apps and/or sell "Shein" goods, including counterfeit "Stussy" goods, have changed frequently. Upon information and belief and without limitation, Shein has operated in some manner in the United States under one or more of the following names:

- Shein Group UK Limited
- Shein Group Limited
- Shein.com
- Fashion Direct Corp.
- Zoetop Business Co., Ltd.
- Roadget Business Pte. Ltd.
- Shein Distribution Corporation

15.     Upon information and belief, Stussy avers that this list of entities is non-exhaustive and may include others. Upon information and belief, the purpose of the frequent name changes is to avoid liability for unlawful acts. As the result of Stussy's due diligence and investigation, the only location wherein Stussy has discovered mention of these entities is hidden within boilerplate language in Terms & Conditions.

16.     The following outlines, in part, how the "Shein scheme" works.  When a U.S. customer orders a Shein-branded product through the Shein websites and/or the Shein mobile apps, the resulting invoices and credit card statements reflect that "Shein" is on the other end of the transactions. Shein refers to itself throughout the websites and apps as "Shein" - a single entity. "Shein" advertises itself as "Shein," including, for example, in its paid Google advertisements. The public and media (including, without limitation, *The Economist* and *The Wall Street Journal*) refer to it as "Shein."  But after extensive research and effort, Stussy has been unable to identify this "Shein" entity because, on information and belief, no such entity exists. Stussy is unaware of any requests for correction issued by "Shein" or any of the Defendants doing business as "Shein." To this day, Shein's outward face to the world is that of a single entity named "Shein." Shein's websites and/or mobile apps contain and/or recently contained the following statements or make the following representations:

a.     "SHEIN is a global fashion and lifestyle e-tailer committed to making the beauty of fashion accessible to everyone."

b.     "We use on-demand manufacturing technology to connect suppliers to our integrated supply chain, enabling us to reduce inventory waste and deliver quality products at affordable prices to customers around the world."

c.     "We have operations in Singapore, Guangzhou and Los Angeles, along with other key global markets."

d.     "Shein" has nearly 10,000 employees worldwide.

e.     "Shein" is selling to 150+ countries.

/ / /

f.      "SHEIN is an international B2C fast fashion e-commerce company. The company mainly focuses on women's wear, but it also offers men's apparel, children's clothes, accessories, shoes, bags and other fashion items. SHEIN mainly targets Europe, America, Australia, and the Middle East along with other consumer markets. . . . Its business covers more than 150 countries around the world."

g.      All the Shein websites have a single point of contact: LEGAL@SHEIN.COM. There are no separate email addresses for each website and/or mobile application. The fact that this contact email appears directed to an obvious legal department speaks volumes.

h.      After a customer places an order, it receives an acknowledgement email from "Shein Customer Service" from the email address usservice@sheinemail.com. Although Shein now wishes to hide behind separate entities from various jurisdictions, it cannot change the facts that establish all the entities jointly operate as a single "Shein" entity and represent themselves to customers as a single worldwide entity.

17.    Upon information and belief, all Defendants are responsible in some manner for the events described herein and are liable to Stussy for the damages it has incurred as described in this complaint.

**PERSONAL JURISDICTION OVER FOREIGN DEFENDANTS IS PROPER.**

18.    Defendants are subject to jurisdiction in this Court because exercising such jurisdiction does not violate the principles of fair play and substantial justice. Defendants have purposefully availed themselves of the privilege of doing business in California by the acts described herein. Furthermore, Defendants are being sued for a violation of a federal statute; should Defendants argue that there is no jurisdiction in any single state in the United States over them, then Defendants' contacts with the entire United States are sufficient that exercising such jurisdiction does not violate due process.

19.     Upon information and belief, Defendants are agents for each other, alter egos for each other, and are joint, vicarious and contributory infringers, as averred below in this complaint. Defendants, their agents, their co-conspirators, and their owners and affiliates have surreptitiously created numerous shell companies for the purpose of evading liability while making billions of dollars from United States consumers – at the expense of American companies. At minimum, Shein has used the entities Stussy Group UK Limited, Zoetop, Roadget, and SDC at various times to act as or purport to act as the sole operator of the Shein websites and the Shein mobile apps, which are directed towards United States consumers and promote and sell Shein products to United States consumers, including the infringements and counterfeits at issue in this suit.

20.     According to the "About Us" page as seen on US.SHEIN.COM as of January 24, 2018, Defendants claim to have started in the United States:

> *From what started as a small group of passionate fashion loving individuals in North Brunswick, New Jersey in 2008, to a multinational team, SHEIN has grown immensely to what it is today.*

A printout from the January 24, 2018 version of the US.SHEIN.COM "About Us" page is attached as **Exhibit B**.

## Defendants Roadget and Zoetop Explicitly Directed Themselves to US Customers, Made Sales in the US, and Have Facilities and Assets in the United States

21.     It is undeniable the Shein websites and the Shein mobile apps are directed towards customers in the United States, and, upon information and belief, these sites are directed *only* to U.S. customers. For example, the US.SHEIN.COM site is entitled "SHEIN USA." Hereinafter reference to the Shein websites, the Shein mobile apps, and "Defendants' website" refer to all the Defendants' websites and mobile apps directed towards customers in the United States.

22.     On information and belief, Zoetop owned and operated the US.SHEIN.COM website during at least part of the time relevant herein. Further, Zoetop owned the SHEIN and ROMWE trademarks (hereinafter, collectively, "the SHEIN trademarks") in the United States during at least part of the time relevant herein. All Shein products sold to American consumers, including the counterfeit "Stussy" products, were sold under the SHEIN trademarks. Upon information and belief, the SHEIN trademarks owned by Zoetop are and/or were worth hundreds of millions of dollars at the time of its ownership. On information and belief, during at least part of the relevant time herein, Zoetop was the seller of the Shein products, including the counterfeit "Stussy" products, which were sold exclusively through Defendants' website. Upon information and belief, Defendants' website was hosted in the United States, the goods were sold in the United States, payment for the goods was made in the United States, and the transactions were subject to American law. Upon information and belief, Zoetop had physical facilities, employees, and other assets in the United States during the period of time when it operated the US.SHEIN.COM website.

23.     On information and belief, Roadget owned and operated the US.SHEIN.COM website during at least part of time relevant herein. Further, Roadget owned the SHEIN trademarks in the United States during at least part of the time relevant herein. All Shein products sold to American consumers, including the counterfeit "Stussy" products, were sold under the SHEIN trademarks. Upon information and belief, the SHEIN trademarks owned by Roadget are and/or were worth hundreds of millions of dollars at the time of its ownership.  During at least part of the relevant time herein, Roadget was the seller of the of the Shein products, including the counterfeit "Stussy" products, which were sold exclusively through Defendants' website. Defendants' website was hosted in the United States, the goods were sold in the United States, payment for the goods was made in the United States, and the transactions were subject to American law. Upon information and belief,

Roadget had physical facilities, employees, and other assets in the United States during the period of time when it operated the US.SHEIN.COM website.

24.    According to the Terms & Conditions that appeared on the US.SHEIN.COM website as of December 29, 2017, Defendants' website was operated solely by Zoetop during at least part of the relevant period of infringement:

> *All transactions on SHEIN.com are processed by ZOETOP BUSINESS CO., LIMITED. Reach us anytime at service@shein.com.*
>
> *For any other type of purchases, these terms are an agreement between you and ZOETOP BUSINESS CO., LIMITED and goods and/or services will be delivered by ZOETOP BUSINESS CO.,LIMITED directly.*

The Terms & Conditions also stated:

> *CHOICE OF LAW - This agreement and matters connected with the performance thereof shall be construed in accordance with, and governed by, the law of the State of Florida as if it were executed and performed entirely within the State of Florida.*

A printout of the Terms & Conditions found on the US.SHEIN.COM website as of December 29, 2017 are attached hereto as **Exhibit C**.

25.    At some point in time subsequent to December 29, 2017, Roadget became the sole owner and operator of Defendants' website. The Terms & Conditions that appeared on the US.SHEIN.COM website as of September 12, 2020 stated as follows:

> *1.1 Scope. Welcome to SHEIN.com. This Terms & Conditions ("Agreement" or "Terms") is **a contract between you and Roadget Business PTE. LTD.**, Registered address at 112 Robinson Road #03-01 Robinson 112 Singapore (068902) (collectively, "SHEIN," "we", "us" or "our"), governing your use of our website at us.shein.com (the "Site"), any mobile applications ("Apps") that hyperlink to this Agreement, or any other websites, pages, features, or content*

///

*owned and operated by us that hyperlink to this Agreement (collectively, including the Site and Apps, the "Services").*

The Terms & Conditions also explicitly refer to application of United States federal law:

*Use the Services for any unlawful purposes, or that could violate any applicable federal, state, local, or international law or regulation; To engage in any conduct that restricts or inhibits anyone's use or enjoyment of the Services. . . .*

Further, the Privacy Policy on the US.SHEIN.COM website, as of September 12, 2020 indicates that Roadget collects and retains customers' personal information and uses it to, among other things, tailor and individualize advertising personal to each customer. The Privacy Policy also includes an entire section entitled "Notice to California Residents" (Section 10), which clearly demonstrates that Defendants expected not just American customers, but specifically California customers, to shop through Defendants' website.  As such, it is reasonable for Roadget to expect it would be subject to litigation in California, whether in state or federal court.

Printouts from the Terms & Conditions and the Privacy Policy found on the US.SHEIN.COM website as of September 12, 2020 are attached hereto as **Exhibit D**.

26.    At some point in time subsequent to September 12, 2020, the Terms & Conditions were amended. The Terms & Conditions that appeared on the US.SHEIN.COM website as of March 13, 2022, stated as follows:

*SHEIN U.S. TERMS & CONDITIONS*

*IMPORTANT NOTICE FOR RESIDENTS IN THE UNITED STATES ONLY.*

*If you are located in the United States, theses [sic] Terms & Conditions ("Agreement" or "Terms") are a contact between you and Roadget Business Pte. Ltd., as operator of the website. . . ."*

*2.4  . . . For SHEIN gift cards . . . once any portion of such gift cards are redeemed on the U.S.Site, us.shein.com, . . . .*

*6.1 . . . is protected by U.S. and international copyright laws.*

1

2

3

4

*6.2   SHEIN Marks.   In addition, the "SHEIN" trademarks, service marks, icons, graphics, wordmarks, designs and logos contained therein ("Marks"), are owned by Roadget Business Pte., Ltd.   . . . Mark of SHEIN are trademarks in the United States. . . .*

5

6

*12.   LEGAL DISPUTES AND ARBITRATION AGREEMENTS FOR USERS IN THE UNITED STATES.*

7

8

9

*12.2   . . . shall be finally settled by binding arbitration administered by JAMS, in accordance with JAMES Streamlined Arbitration Rules and Procedures . . . [JAMS is located in the United States.]*

10

11

*12.2   . . . to the extent the filing fee for arbitration exceeds Two Hundred and Fifty U.S. Dollars . . .*

12

*12.5   California Private Attorney General Act (PAGA) . . ..*

13

14

15

16

17

***12.7   Exclusive Venue for Litigation.   . . . . you [the customer] and we agree that any litigation between you and us shall be filed exclusively in the state of federal courts located in California. . . .   You and we expressly consent to the exclusive jurisdiction in California for any litigation other than small claims court actions.***

18

19

20

*13.5   Applicable Law.   If you are a resident of the United States, your use of our Site and the product purchase contracts through said Site shall be governed by the laws of the United States.*

21

22

*14.   COPYRIGHT INFRINGMENT AND DMCA POLICY.   . . . notify use in accordance with the Digital Millennium Copyright Act.*

23

24

25

*15.   BUSINESS TRANSFERS.   If Roadget Business Pte. Ltd or substantially all of its assets [are transferred or assigned] . . . .   You acknowledge that . . . any acquirer of the Company may continue to use your personal information. . . .*

26

27

28

A printout of the Terms & Conditions found on the US.SHEIN.COM website as of March 13, 2022 is attached hereto as **Exhibit E**. Once again, these terms and

/ / /

conditions make it clear Roadget reasonably expected to be subject to litigation in California.

27.    Based upon the foregoing, it is obvious Defendants were directing their activities towards the United States, even choosing California as the forum within which all disputes must be adjudicated. Defendants were actively collecting information on United States and California residents and using that information to uniquely tailor the customers' experiences on the US.SHEIN.COM website.

28.    Upon information and belief, during the times wherein Roadget and Zoetop operated Defendants' website and/or sold the infringing goods, the US.SHEIN.COM website was hosted by content delivery networks (CDNs) located in the United States.

29.    During the time frames wherein Roadget and Zoetop operated Defendants' website and/or sold the infringing goods, Defendants contracted in the United States with the following U.S.-based companies for the purpose of pushing marketing materials to customers in the United States:  Facebook, Twitter, Pinterest, Snapchat, and others. Defendants also made the Shein mobile apps available in the U.S. through the Apple App Store and Android app store.

30.    Upon information and belief, Roadget and Zoetop have entered into contracts with vendors located in the United States, and/or are doing business in the United States with other vendors located in the Unites States, specifically for the purpose of driving U.S. traffic to Defendants' website to purchase Shein products. Specifically, Shein's goods, including the counterfeit "Stussy" products at issue herein, are and/or were pushed, advertised, and/or recommended through social media and online by "influencers" retained, directed toward the U.S. market, and paid in the United States.

31.    During the time frames wherein Roadget and Zoetop operated Defendants' website and/or sold the infringing goods, Defendants contracted in the United States with the following American based payment providers:  PayPal, Visa,

Mastercard, Maestro, American Express, Discover, and Diners Club. Upon information and belief, Defendants contracted in the United States with Klarna and Afterpay to handle United States payment processing through Defendants' website.

32.    Defendants' website claims to be protected by Trustwave's Trusted Commerce program, which, on information and belief, operates in and/or services the United States.

33.    Defendants' website claims to be "Protected & Monitored" by the Digital Millennium Copyright Act, which is a part of U.S. Copyright Law.

34.    Roadget has at least one facility located in Compton, California. When a customer in Orange County, California orders a Shein-branded product through the US.SHEIN.COM website, the product ships with a "Shein" hangtag in a "Shein" bag and the return address on the outer shipping package is "Roadget Business Pte. Ltd., 18831 South Ferris Place, Compton, CA 90220."

 

35.    According to publicly reported information, Shein earns $15.7 billion in sales annually, with a substantial portion of that sum stemming from U.S. sales. According to reports, Shein has cornered 40 percent (40%) of the United States fast fashion market.

36.    Upon information and belief, during the period of time in which Roadget was the sole owner and operator of the US.SHEIN.COM website, Shein sold billions

/ / /

of dollars of goods, including the counterfeits at issue in this lawsuit, to tens of millions of customers located in the United States.

37.     Upon information and belief, during the period of time in which Zoetop was the sole owner and operator of the US.SHEIN.COM website, Shein sold billions of dollars of goods, including the counterfeits at issue in this lawsuit, to tens of millions of customers located in the United States.

38.     Upon information and belief, during the period of time in which Roadget and SDC jointly owned and operated the US.SHEIN. COM website, Shein sold billions of dollars of goods, including the counterfeits at issue in this lawsuit, to tens of millions of customers located in the United States.

39.     The exact relationship and division of duties among Defendants remains unclear, and not for a lack of investigative efforts by Stussy. Stussy's inability – and the inability of the public, in general, as illustrated above - to figure out Defendants' byzantine corporate structure is by Defendants' purposeful design. Knowing they are pirating American products and will be subject to liability, Defendants do not want anyone to know who is behind the Shein selling machine. Regardless, Defendants, and each of them, played and/or still play a part in the overall chain of Shein distribution. As such, Defendants are jointly and severally liable for the infringements.

40.     No customer can purchase Shein products without accessing Defendants' website, agreeing to Defendants' Terms & Conditions, and agreeing to Defendants' dispute resolution procedures which Defendants dictate must take place in federal or state courts located in California. "But for" Defendants' website and their operation of said website, there could not be sales of Shein products, let alone the "Stussy" counterfeits.

41.     Roadget and Zoetop have purposefully availed themselves of the benefits of United States law by, specifically and without limitation, filing over 100 trademark applications in the United States. Each of those applications (unless they fall under certain narrow exceptions) require the applicant (i.e., Roadget and Zoetop) to swear

under penalty of perjury that they are using or have a good faith intent to "use the mark in commerce" regulated by U.S. Congress. Lanham Act, §§ 1(a), (b). Upon information and belief, the SHEIN trademarks that were owned by Zoetop, then transferred to Roadget, are worth hundreds of millions of dollars.

42.    Roadget and Zoetop have further purposefully availed themselves of the benefits of United States law by, specifically and without limitation, filing proceedings as plaintiffs with the Trademark Trial and Appeal Board ("TTAB"). Roadget has filed at least three TTAB proceedings as plaintiff, one as recently as July 2022 - four months after this lawsuit was filed. Zoetop has also filed at least three proceedings as plaintiff, after the conclusion of which, upon information and belief, Zoetop assigned ownership of the registrations or applications at issue over to Roadget. Attached hereto as **Exhibit F** are true and correct copies of printouts from the Trademark Trial and Appeal Board Inquiry System ("TTABVUE") reflecting this information.

43.    Roadget and Zoetop have appointed a Domestic Representative who is required to accept service on their behalf.[1]

44.    On information and belief, Zoetop has responded to and answered lawsuits filed against it in the United States for intellectual property infringement without fighting personal jurisdiction.

45.    All Defendants have committed at least one intentional act "directed at the forum," because they acted with the intent to perform an actual, physical act in the real world. Specifically and without limitation, these intentional acts include and/or included purchasing and maintaining domain names and mobile apps, listing those

---

[1]    Case law differs as to whether proceedings other than those solely related to USPTO and TTAB proceedings can be served on the Domestic Representative, with at least one case holding that, by appointing such Domestic Representative, these Defendants accepted the possibility that such service of a civil litigation could be validly made.

domain names and mobile apps with Domain Name Servers ("DNS") in the United States, hosting content on content delivery networks ("CDNs") located in the United States, soliciting customers in the United States, collecting personal information from customers in the United States and using that information to tailor marketing specific to each customer, and, upon information and belief, purchasing domain privacy services in the United States. Further, Defendants have entered into contracts with each of these types of vendors and/or entities.

46.     Defendants have committed additional intentional acts by operating websites under the domains US.SHEIN.COM and US.ROMWE.COM - the domain names, themselves, show explicit direction to the United States, i.e. *US*.SHEIN.COM and *US*.ROMWE.COM. These differ from Defendants' other "Shein" websites directed at other countries wherein the URLs replace the "US" portion of the domain with the initials for each country, such as BR.SHEIN.COM for Brazil and CA.SHEIN.COM for Canada. Defendants also offer parallel mobile apps that are specifically directed at the United States. By these acts, Defendants have demonstrated an intent to cultivate a U.S. customer base.

47.     As explained above, Roadget appears to be based in Compton, California and Zoetop does not appear to have any effective place of business. The fact that Stussy is located in California and suffered damages in California, coupled with the fact that the counterfeits were sold by Defendants and/or through Defendants' website for at least some of the time covered by this lawsuit, makes it fair that this lawsuit be heard in California. Because Roadget has no personnel at its Singapore office, and Zoetop has no personnel at its Hong Kong office, there is no countervailing reason to have this matter litigated anywhere other than in the United States, in California.

48.     Defendants caused harm in the United States, and, upon information and belief, Defendants knew the harm it caused was likely to be suffered in the forum state. Specifically, Defendants have, for years, purposefully targeted American companies and stolen or infringed their intellectual property, thus causing damage in

the United States. Some of the California-based companies from which Defendants have stolen and/or infringed intellectual property include Levi Strauss (based in San Francisco), Oakley (based in Orange County, California), and plaintiff Stussy, Inc. (based in Orange County, California). As detailed below, these California entities have filed suit against Defendants a.k.a. "Shein" for their numerous offenses.

49.    Defendants committed the "bad acts" that form the basis of Stussy's complaint in the United States and in California. Upon information and belief, a material portion of the harm suffered from Defendants' acts occurred in the United States and in California.

50.    All of Stussy's claims arise out of Defendants contacts with the United States. But for Defendants' contacts with the United States and California, the counterfeit "Stussy" products would not have been sold in the United States and California.

## ALLEGATIONS IN SUPPORT OF ALL CLAIMS

**Stussy's Famous Trademarks**

51.    Stussy is an Irvine-based street fashion brand that is world famous. Its name and iconic trademarks are instantly recognized, such as its "Graffiti Style" mark seen here:

52.    Since approximately 1980, Stussy has been and is now engaged in the business of manufacturing, promoting, distributing and selling its high-quality clothing. All of Stussy's products are manufactured pursuant to its strict specifications and quality control. Stussy is considered an "exclusive" high-end product and relies on such exclusivity to promote its brand and its sales.

53.    Stussy has long used, prior to the acts of Defendant as described herein, its trademark STUSSY, including without limitation, in standard characters, in a

graffiti style, and a script style. Stussy has also long used, prior to the acts of the Defendants as described herein, its internationally recognized "Stussy World Tour" Mark, its SS Link Mark, and its SS Plain Mark. Collectively, Stussy's trademarks are hereinafter referred to as "the STUSSY Marks." The STUSSY Marks are widely recognized on an international level and have become enormously popular, driven by Stussy's arduous quality standards and innovative design. Stussy has worked for decades to cultivate a reputation for excellent products and to maintain its status as a highly sought-after brand.

54.   Stussy is famous throughout the United States and has been so for decades. Since the early 1990s, Stussy has sold its products through a few, carefully chosen stores as well as its own STUSSY-branded stores in fashion centers such as London, Los Angeles, Milano, Paris, New York, Shanghai, and Tokyo. Stussy also currently has or has had STUSSY-branded stores in Las Vegas, Miami, Philadelphia, San Francisco, Seattle, Honolulu, as well as an Archive Store in Orange County, California.

55.   Stussy also enjoys fame throughout the rest of the world. Without limitation, Stussy has stores in Hong Kong, Madrid, Singapore, Amsterdam, Toronto, Vancouver, Taiwan, and stores coming soon in in Shenzhen and Beijing. Stussy is incredibly popular in Japan, Australia, and New Zealand, and has multiple distributors throughout Europe.

56.   Stussy products enjoy a presence in the sought-after Dover Street Market ("DSM") stores, with product selections in their Los Angeles, New York, London, Ginza (Tokyo), and Singapore locations. Stussy enjoys particularly high levels of popularity and has a large presence in the fashion world in China, Hong Kong, and Singapore.

57.   Stussy has an ever-growing presence online. In addition to a U.S.-based website, Stussy owns and operates separate websites for the European Union, Japan, Korea, the UK, and others. Stussy also utilizes social media for marketing,

consistently sharing quality photographs and content. Stussy has an extensive social media following and fan base. For example, Stussy's Instagram page has approximately 4.6 million followers. Stussy creates and posts new and interesting content each week to keep its fan base engaged.

58.    Stussy is a high-end (and high-price) limited distribution brand, similar to other high-fashion brands, which is an important aspect of the brand's appeal to consumers. Stussy has purposefully and by design limited the number of stores in the United States that it allows to carry its products. Stussy has always maintained discipline over its level of distribution and has never been a "mass-market" brand.

59.    One way that illustrates Stussy's high-end reputation and desirability is through the collaborations it undertakes with equally high-end brands. These collaborations reflect that other high-end brands want to be associated with Stussy. These collaborations are also highly anticipated by its consumers, as it provides them the opportunity to obtain products bearing the STUSSY name that would not otherwise be available. Recently, Stussy has participated in collaborations with NIKE, CONVERSE, COMME DES GARCONS, APPLE, OAKLEY, DR. MARTENS, and other even more unique brands such as OUR LEGACY, DENIM TEARS, and CACTUS PLANT FLEA MARKET. Stussy has also collaborated with famous designers such as Matt Williams and famous musicians such as Peter Tosh, Eric B. & Raikim.

60.    Stussy undertakes extensive efforts to promote and preserve its brand. Over the past 40 years, Stussy has spent tens of millions of dollars in advertising, promoting, and marketing featuring the STUSSY Marks. Stussy and its products bearing the STUSSY Marks have also enjoyed extensive, unsolicited publicity resulting from its high-quality, innovative designs and renown as a desired, limited-access brand. Stussy's products bearing the STUSSY Marks have been featured in numerous magazine spreads in internationally-distributed publications such as

/ / /

GLAMOUR, COSMOPOLITIAN, STREETWEAR, WARP, and H&M, and on social media platforms worldwide.

61.    Stussy has built substantial goodwill in the STUSSY Marks, which is of substantial value to Stussy.

62.    Stussy owns hundreds of valuable trademark registrations around the world for its STUSSY Marks. In the U.S., alone, Stussy owns approximately 70 registrations, covering hundreds of different types of products and services. Stussy owns over 1,000 trademark registrations worldwide.

63.    Stussy is the owner of, without limitation, the STUSSY Marks both at common law and through registrations therefore as follows:

a.    STUSSY:  this mark was registered on the Principal Register of the United States Patent & Trademark Office ("the USPTO") on December 25, 2007 as Registration No. 3359114 for "clothing, namely, bathing suits, belts, coats, dresses, jackets, jerseys, pajamas, pants, rainwear, scarves, shirts, shorts, skirts, socks, sweat pants, sweat shirts, sweaters, sweatbands, swim suits, t-shirts, tank tops, vests, underwear, wind-resistant jackets, footwear, headwear" in International Class 25. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

b.    STUSSY:  this mark was registered on the Principal Register of the USPTO on July 28, 1998 as Registration No. 2176426 for "luggage, all purpose sport bags, carry-on bags, tote bags, travel bags, beach bags, backpacks, waist packs, book bags" in International Class 18. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

c.    STÜSSY : this stylized "Stussy with umlaut" mark was registered on the Principal Register of the USPTO on November 6, 2001 as Registration No. 2504298 for "clothing, namely, bathing suits, belts, coats,

dresses, head bands, jackets, jerseys, pants, rainwear, shirts, shorts, skirts, sweat pants, sweat shirts, sweaters, swim suits, t-shirts, tank tops, vests, wind-resistant jackets; footwear, headwear" in International Class 25. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

d.                    :  this stylized "Stussy Graffiti" mark was registered on the Principal Register of the USPTO on May 13, 1997 as Registration No. 2060941 for "clothing, namely T-shirts, sweatshirts, jerseys, shorts, sweatpants, jackets, hats, caps, swimsuits, skirts, dresses, shirts, tank tops, pants, coats and belts" in International Class 25. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

e.                    :  this stylized "Stussy Graffiti" mark was registered on the Principal Register of the USPTO on November 13, 2007 as Registration No. 3334366 for "clothing, namely, bathing suits, [beach cover ups, ]belts, coats, dresses, jackets, jerseys, pajamas, pants, rainwear, scarves, shirts, shorts, skirts, socks, sweat pants, sweat shirts, sweaters, sweatbands, swim suits, t-shirts, tank tops, vests, underwear, wind-resistant jackets, wristbands; footwear, headwear" in International Class 25. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

/ / /

/ / /

/ / /

/ / /

f. : this stylized "Stussy Graffiti" mark was registered on the Principal Register of the USPTO on October 10, 2000 as Registration No. 2393339 for "articles made from leather and imitations of leather, namely, backpacks, beach bags, book bags, carry-on bags, coin purses, cosmetic bags sold empty, daypacks, duffel bags, fanny packs, gym bags, handbags, leather key cases, luggage, passport cases, purses, shopping bags, all purpose sports bags, travel bags, waist packs, wallets" in International Class 18. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

g. : this stylized "Stussy Script" mark was registered on the Principal Register of the USPTO on June 13, 2000 as Registration No. 2357804 for "clothing, namely, bathing suits, belts, coats, dresses, jackets, jerseys, pants, rainwear, shirts, shorts, skirts, sweat pants, sweat shirts, sweaters, swim suits, t-shirts, tank tops, vests, wind-resistant jackets; headwear" in International Class 25. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

h. : this stylized "Stussy Script" mark was registered on the Principal Register of the USPTO on September 18, 2018 as Registration No. 5564337 for "clothing, namely, belts; coats; footwear, namely, shoes; headgear, namely, hats, caps, beanies, scarves; hosiery; jackets; jerseys; pants; rainwear; scarves; shirts; shorts; socks; sweat pants; sweat suits; sweatshirts; swim suits; T-shirts; tank tops; wind resistant jackets" in International Class 25.

1

2

3  i.  : this stylized "Stussy Thin Script" mark was registered on

4  the Principal Register of the USPTO on June 13, 2000 as Registration No.

5  2357805 for "clothing, namely, bathing suits, [ beach cover ups, ] belts, coats,

6  dresses, [head bands], jackets, jerseys, [pajamas,] pants, rainwear, shirts, shorts,

7  skirts, sweat pants, sweat shirts, sweaters, swim suits, t-shirts, tank tops,

8  [tights], vests, wind-resistant jackets; headwear" in International Class 25. This

9  registration has become incontestable within the meaning of Section 15 of the

10  Lanham Act, 15 U.S.C. § 1065.

11

12  j.

13

14  : this stylized "Stussy World Tour" mark was registered on

15  the Principal Register of the USPTO on August 14, 2018 as Registration No.

16  5539397 for "Clothing, namely, belts, jackets, pants, shirts, sweaters,

17  sweatshirts, t-shirts, vests and headwear" in International Class 25.

18

19

20  k. : this stylized "SS Link" mark was registered on the

21  Principal Register of the USPTO on February 23, 1999 as Registration No.

22  2225736 for "clothing, namely, coats, dresses, jackets, jerseys, pants, shirts,

23  shorts, skirts, sweatshirts, sweatpants, swimsuits, t-shirts, tank tops, caps and

24  hats" in International Class 25. This registration has become incontestable

25  within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

26  / / /

27  / / /

28  / / /

l. : this stylized "SS Plain" mark was registered on the Principal Register of the USPTO on May 12, 2009 as Registration No. 3618692 for, among other things, "clothing, namely, bathing suits; [ beach cover ups; ] belts; board shorts; coats; dresses; jackets; jerseys; pajamas; pants; polo shirts; rainwear; scarves; shirts; shorts; skirts; socks; sweat pants; sweat shirts; sweaters; sweatbands; swim suits; t-shirts; tank tops; vests; underwear; wind-resistant jackets; wristbands; footwear; headgear, namely, berets, caps, hats, scarves" in International Class 25. This registration has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

m.   STUSSY: this mark was registered in California on December 23, 1992 as Registration No. 096863 for "clothing, namely shirts, blouses, t-shirts, shorts, pants, jeans, jackets, sweatshirts, caps, bathing suits, vests, shoes, sandals" in International Class 25.

n.   STUSSY DESIGNS (stylized): this mark was registered in California on February 27, 2007 as Registration No. 112428 for "T-shirts" in International Class 25.

64.   Stussy has given notice that the STUSSY Marks are registered pursuant to 15 U.S.C. §1111, by displaying the registration symbol ® with the STUSSY Marks.

65.   All of the above registrations are valid, subsisting and exclusively owned by Stussy. Copies of the registrations are attached as **Exhibit G**.

66.   The STUSSY Marks are distinctive to both the consuming public and Stussy's trade.

67.   At all times relevant hereto, the STUSSY Marks have been continually used by Stussy throughout the world and in the United States, including California, on or in connection with the manufacture, distribution, sale, and promotion of Stussy's products.

68.     Stussy has invested substantial amounts of money and countless hours of manpower over decades to protect its trademarks. Stussy has invested millions of dollars to file, maintain, and defend its trademarks from would-be infringers both in the United States and throughout the world.

69.     Stussy has spent millions of dollars maintaining an active and robust enforcement program against the sale of counterfeits over several decades. These efforts include securing and maintaining trademark registrations and recording of Stussy's trademarks with customs services in the United States, Europe, and Asia. Stussy, itself, has even given training sessions to U.S. customs officers in Long Beach/Los Angeles, New York City, and Seattle. Stussy also employs investigators and law firms in approximately 150 countries to assist it with its intellectual property rights enforcement efforts. In addition to sending hundreds of cease-and-desist letters per month, Stussy pursues litigation in the United States and elsewhere, as needed. Stussy has filed lawsuits against infringers in, without limitation, China, Hong Kong, Singapore and the United States. Fortunately, with the exception of Shein, large and established companies have developed rigid and effective anti-counterfeiting measures, such as Amazon's Brand Registry and, as a result, they do not often sell counterfeits, alleviating Stussy's need to file lawsuits.

70.     Stussy has, and does, utilize Uniform Domain Name Dispute Resolution (UDRP) claims to remove websites containing the word Stussy in the URL where, typically, counterfeits are sold. Stussy subscribes to a "watch service" that reviews all trademark office publications around the world, not just in the U.S., and notifies Stussy if there are any newly filed trademark applications that might be of concern. If any problematic applications are discovered, Stussy files the necessary oppositions.

71.     Stussy spends thousands of dollars *per month* to employ investigative firms to police the internet for counterfeits and assist in getting counterfeit listings taken down. The investigative efforts balance between wholesale offers (B2B) and retail (B2C). Stussy even has one consultant dedicated solely to handling anti-

counterfeit efforts in China. Unfortunately, even the most diligent efforts cannot uncover every scam on the internet.

72.    As part of its efforts to protect its valuable trademarks, Stussy has taken criminal action against counterfeiters in multiple countries. For example, in China, alone, Stussy employs multiple law firms to handle these types of criminal cases who conduct raids with the local police.

73.    The STUSSY Marks represent products that are desirable. The STUSSY Graffiti and the STUSSY Script marks are instantly recognized by most people in the United States and by key market segments throughout the world.

74.    As a result of Stussy's widespread and continuous use, advertisement, and promotion of its products in connection with the STUSSY Marks, the STUSSY Marks have become widely known and recognized as identifying Stussy as the source of a wide variety of clothing and related goods and as distinguishing such goods from those of others. The STUSSY Marks have come to represent and symbolize the excellent reputation of Stussy's products and Stussy's valuable goodwill among members of the public throughout the world and in the United States, including California. The STUSSY Marks have acquired a secondary meaning throughout the world and in the United States, including, without limitation, California.

75.    The STUSSY Marks are more valuable than ordinary marks because Stussy's business model is to create an exclusive brand with limited distribution. As a result, there is much unmet demand for Stussy's products and for products with Stussy's look. As alleged below, Defendants have attempted to fill the market's desire for Stussy's products by diverting customers to Defendants' website containing infringing products.

76.    Infringements, and especially counterfeits, undercut all of Stussy's brand preservation efforts in multiple ways:  counterfeits undercut Stussy's core marketing strategy to have and maintain limited distribution; counterfeits are found in notoriously poor-image stores, undercutting Stussy's calculated development of a

reputation for quality and exclusivity; counterfeits undercut the quality of the fabrics, designs, and other materials Stussy so painstakingly chooses, as counterfeits are almost always of poor quality and counterfeiters often use graphics that Stussy does not and would not use; and counterfeits undercut Stussy's pricing by selling products at a fraction of the cost of a genuine Stussy product.   All of these counterfeiting activities undermine the exclusive image and reputation Stussy has taken decades to cultivate.

### B.    Defendants' Infringing Activities

77.    Defendants are entities operating together as "Shein," a Chinese fast-fashion company. The present lawsuit arises from Defendants' manufacture, production, marketing, distribution, advertisement, offering for sale, and/or sale of products that bear marks identical to and/or substantially indistinguishable from one or more of the STUSSY Marks ("the Accused Products"), two examples of which are shown below:

| Stussy's Famous, Registered Trademark | Shein's Counterfeit Product |
| --- | --- |
| | |



78.     Upon information and belief, Defendants are engaged in the promotion, marketing, and sale of clothing and footwear products through Defendants' highly interactive e-commerce websites US.SHEIN.COM and US.ROMWE.COM which are accessible to consumers throughout the United States, including those within this judicial district. Upon information and belief, Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold the Accused Products in the Central District of California. Stussy has not granted a license or any other form of permission to Defendants with respect to any of its trademarks, or other intellectual property.

79.     Upon information and belief, Defendants have acted willfully and in bad faith, and Defendants' acts have misled and confused and were intended to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Accused Products with genuine Stussy Products, or as to the origin, sponsorship, or approval of the Accused Products by Stussy.

80.     Shein has a reported valuation of $100 billion and has cornered 40 percent (40%) of the U.S. fast-fashion market. Upon information and belief, Shein's annual sales in the United States are approximately $15.7 billion. According to press reports, Shein will be as large as Amazon within one year's time. Upon information and belief, a monopoly on this high of a percentage of the market by "one company" equates to billions of dollars in sales.

/ / /

81.    Upon information and belief, Defendants knew that the STUSSY Marks were famous at the time they created and sold the counterfeits. A simple Google search online would have instantly revealed that genuine goods bearing the STUSSY Marks are available through authorized channels. Defendants' counterfeit "Stussy" products are sold for a fraction of the prices of Stussy's genuine products and are of inferior quality, thus undercutting Stussy's brand. For example, Defendants sold the following counterfeit "Stussy" jersey for $17.67:



A genuine Stussy jersey retails for $120.00

82.    Defendants' goods bearing the STUSSY Marks, or marks that are substantially indistinguishable, were counterfeit, and Defendants knew or should have known this. Numerous media articles recounting Defendants' regular and systematic infringing practices are widely and readily available, including articles written about this very proceeding, one of which was published just days after this suit was initially filed. For example, an article published in *The Sourcing Journal* on March 14, 2022 entitled, "Shein Sued by Stussy Over Counterfeit Streetwear," not only explains Stussy's claims against Shein in detail, but includes, right at the top of the first page, the following side-by-side look at a genuine Stussy sweatshirt bearing Stussy's iconic "Script" mark next to Shein's counterfeit sweatshirt:

/ / /

/ / /

/ / /



Stussy's basic crewneck sweatshirt, left, sells for $105, while Shein's dupe sold for $7.    CREDIT: Stussy, Shein

A true and correct copy of the March 14, 2022 article from *The Sourcing Journal* is attached hereto as **Exhibit H**. Upon information and belief, a company the size of Shein has or should have a press clipping service as part of a program designed to combat the sale of infringing and counterfeit goods. However, in the instant situation, Defendants continued to sell counterfeit Stussy products for months after being made aware of their illegal acts of counterfeiting.

83.     On information and belief, Defendants' infringement of Stussy products is no accident. On the contrary, trademark pirating is part of the "Shein" business model. Indeed, Defendants' knowing disregard for the intellectual property rights of others goes well beyond just its trespasses against Stussy, as recounted herein. Shein is an infamous, predatory company that has a history of, and reputation for, knocking off products of famous designers and brands and stealing the intellectual property of others, not just from small business and new fashion designers, but from established global brands as well. According to media reports, as of May 2022, on TikTok alone, the hashtag #sheinstolemydesign had 2.4 million views. A small sampling of the social media posts that exist evidencing Shein's brazen and wide-spread illegal conduct are shown below:

33







84.    Shein also has a reputation for cheaply made, and arguably unsafe, products:

 

85.    As a result of this pattern of wrongful conduct, Defendants have been sued multiple times for infringing the intellectual property rights of famous brands, artists, and designers, particularly American brands. To list only a few, Defendants have been sued for infringing the following brands:

a.    RALPH LAUREN: *PRL USA Holdings, Inc. v. Zoetop Business Co. Limited*, Case No.: 2:21-cv-02424-JAK-E, Central District of California, filed March 18, 2021; status: active.

b.    LEVI'S Arcuate Stitching Design Trademark: *Levi Strauss & Co. v. Shein Group Limited and Shein Fashion Group, Inc.*, Case No. 3:18-cv-05247, filed August 28, 2018; status: terminated on Dec. 28, 2018 before defendants even answered the complaint. Greenberg Taurig represented both "Shein" defendants.

c.    DR. MARTENS copyrighted shoes designs: *AirWair International Ltd. v. Zoetop Business Co., Limited d/b/a SHEIN and ROMWE*, Case No. 3:20-cv-

07696-SI, filed November 2, 2020; status: terminated on February 24, 2022. Greenberg Taurig represented Zoetop.

86.     Consistently over many years, Defendants have demonstrated a pattern and practice of brazenly selling counterfeits and continuing to do so even after getting caught. If an intellectual property owner *does* manage to find a way to afford the cost of filing suit against Shein, the vast majority of those cases appear to settle relatively quickly and quietly, long before any substantive issues are litigated.

87.     Upon information and belief, Defendants have created a business plan which promotes a deliberate, knowing, and calculated decision to infringe intellectual property first to make a quick buck (i.e., millions of dollars), and ask questions later. If Defendants are pushed to cease their activities (and many small designers and startup companies simply do not have the capital to fight this Goliath), Shein may throw a relatively small amount of money at the "problem" to make it go away. On balance, however, upon information and belief, it is more profitable for Shein to continue to systematically and knowingly infringe, as it nets more money than it has to pay out, when challenged.

88.     In all of Shein's history, there has been no real challenge to Shein's systemic and ongoing business practice of overtly knocking off designs and brands; Shein has unfortunately learned that it is very profitable for Shein to make money off multiple infringements and play the odds that intellectual property owners will not file suit.

89.     Upon information and belief, Shein is the only company of its size to have either little to no procedures in place to prevent the creation, sale, and distribution of infringements and/or counterfeits, or have such ineffectual ones.

90.     Indeed, Defendants are not deterred one bit by this lawsuit. Upon information and belief, for multiple months after this lawsuit was filed, Defendants continued to sell counterfeit "Stussy" products. To date, Stussy has been unable to confirm:  (1) whether Stussy currently knows the full extent of the infringing and

counterfeit "Stussy" products that were sold and/or are being sold by Shein; (2) the time frame during which each of the counterfeit products were sold; and/or (3) whether the sale of all infringing and counterfeit "Stussy" products has, in fact, ceased.

91.    Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Stussy and to its valuable reputation and goodwill with the consuming public for which Stussy has no adequate remedy at law and statutory damages will be the only adequate remedy plus an award of costs and legal fees.

## **FIRST CLAIM FOR RELIEF**

**(Against All Defendants for Infringement and Counterfeiting of Federally Registered Trademarks)**

92.    Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

93.    As detailed above, Stussy is the owner of the valid and federally registered STUSSY Marks.

94.    Defendants used and/or are still using in commerce reproductions, counterfeits, copies, and/or colorable imitations of the registered STUSSY Marks. Defendants are and/or were offering for sale, selling, and distributing products that bear copies and close reproductions of the STUSSY Marks. Defendants' products bearing spurious designations are identical to or substantially indistinguishable from the registered STUSSY Marks.

95.    Defendants' use in commerce of reproductions, counterfeits, copies, and/or colorable imitations of the registered STUSSY Marks is and/or was subsequent to Stussy's first use of any of its registered STUSSY Marks.

96.    Defendants' use in commerce of reproductions, counterfeits, copies, and/or colorable imitations of the registered STUSSY Marks is and/or was in

connection with the same goods that are identified in Stussy's trademark registrations, identified above.

97.   Defendants' unauthorized use in commerce of spurious designations that are identical to or substantially indistinguishable from the registered STUSSY Marks, on and in connection with the Accused Products as alleged herein, is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of the Accused Products, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Stussy, or that Defendants are in some way affiliated with or sponsored by Stussy. Defendants' use is likely to cause consumer confusion. Defendants' conduct therefore constitutes counterfeiting and trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

98.   Because Defendants' unauthorized use in commerce of the registered STUSSY Marks, or marks that are substantially indistinguishable, constitutes counterfeiting, the likelihood of customer confusion is presumed. Defendants' counterfeit products include but may not be limited to the sampling of products seen in the spreadsheet attached hereto as **Exhibit I.**

99.   Upon information and belief, Defendants have committed the foregoing acts of counterfeiting and infringement with full, actual, and constructive knowledge of Stussy's prior rights in the registered STUSSY Marks, Stussy's registrations, and Stussy's extensive and continuous use of the STUSSY Marks, and with the willful intent to cause confusion and trade on Stussy's goodwill. Defendants knowingly and intentionally infringed the STUSSY Marks and did so for the purpose of causing confusion and diverting customers to purchase counterfeit products from Defendants.

100.   On information and belief, Defendants took such actions as, without limitation, (1) intentionally refraining from indexing its alleged "Stussy" products under the Stussy name, knowing that a search for the term "Stussy" would reveal their infringement and counterfeit products more easily, and (2) displaying a review of one

of their infringing and counterfeit products on their website which states that "The shirt looks like a real one." Further, Defendants continued to sell counterfeit goods after being served with this lawsuit proving Defendants are undeterred by the operation of law and will continue knocking off Stussy products.

101.   Upon information and belief, Defendants advertised and promoted the Accused Products and thereby caused harm to Stussy and its brand image. Defendants intended to cause and did cause, directly or indirectly, third parties to advertise and promote the Accused Products, and thereby caused harm to Stussy and its brand image.

102.   Defendants' conduct is causing immediate and irreparable harm and injury to Stussy, and to its goodwill and reputation, and will continue to both damage Stussy and confuse the public unless enjoined by this court. Defendants' promotion, sale, offering for sale, and distribution of the Accused Products has caused a loss of sales of Stussy's genuine products and will result in the loss of future sales to customers, unless enjoined. Such acts have resulted in sales by Defendants of its own goods, which has unjustly enriched Defendants. Plaintiff has no adequate remedy at law.

103.   Unless restrained by this Court, Defendants' acts have caused or are likely to cause Stussy and the public to suffer great and irreparable damage and injury through, *inter alia*, (a) a likelihood of confusion, mistake and deception among the relevant purchasing public, (b) falsely suggesting an affiliation between Stussy and Defendants, despite the absence of such affiliation; and (c) the loss of Stussy's valuable goodwill and business reputation symbolized by the STUSSY Marks.

104.   Stussy has suffered loss of profits and other damages, and Defendants have earned illegal profits, in an amount to be proven at trial. Stussy is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, which such damages and profits should be trebled in accordance with 15 U.S.C. § 1117, enhanced damages and profits, statutory damages, reasonable

attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

105.   Stussy is entitled to elect as an alternative measure of damages the remedy of statutory damages under 15 USC § 1117. Because Defendants' counterfeiting was willful, as detailed below, the amount awarded should be the statutory maximum per counterfeit mark per type of goods sold, offered for sale, or distributed, as the Court considers just.

106.  Defendants' actions of illegal counterfeiting are and/or were willful because (1) Defendants know and/or knew their actions constituted an infringement, (2) Defendants acted knowingly or willfully blinded themselves to facts that would put them on notice that they were infringing another's trademarks, and/or (3) upon information and belief, Defendants suspected wrongdoing and deliberately fail to investigate.

107.  Without limitation, the following facts establish that Defendants' infringement and counterfeiting was willful:

a.    Defendants knew that the STUSSY Marks are famous and/or Defendants willfully blinded themselves to facts that would put them on notice of such and/or Defendants deliberately failed to investigate this fact, as the most cursory of internet searches would instantly reveal the existence of the STUSSY Marks and their sweeping reach and recognition around the world. Indeed, Defendants knew they were infringing the STUSSY Marks and their purpose was to do so.

b.    On information and belief, Defendants knew of the article from *The Sourcing Journal* article (attached as **Exhibit H**), as a company of Defendants' size has or should have a press clipping service, yet, Defendants continue to infringe and sell counterfeits.

c.    This is nowhere near the first time Defendants have been sued for infringing the intellectual property of other companies, particularly famous American brands, as detailed above.

d.     Defendants used identical, or substantially indistinguishable, marks on identical products as those listed in Stussy's trademark registrations and continued their infringing activity for at least several months after receiving notice of their infringements, i.e., the filing of this lawsuit. Defendants did not cease using the counterfeit goods upon receiving notice of the infringing nature of their conduct, but, instead, continued to sell counterfeit "Stussy" products for months after this lawsuit was filed.

e.     To date, Defendants are still actively and knowingly selling counterfeit products that infringe on third parties' intellectual property, including Stussy's intellectual property.

f.     Upon information and belief, Defendants attempted to conceal their infringements by not including the word STUSSY in the metadata in the online listings for the Accused Products, the result being that, when Stussy and its investigators searched for possible infringements and counterfeits during their routine sweep of the internet as part of Stussy's ongoing and regular robust policing efforts to stop counterfeiting, the listings for the Accused Products did not immediately turn up. As such, Defendants did, in fact, successfully conceal their infringement and counterfeiting, allowing them extra time to become unjustly enriched with additional sales of the counterfeit products. Stussy filed this lawsuit within four years of when it knew or should have known of the infringements alleged in this lawsuit.

g.     Defendants knew that they were not authorized sellers of Stussy products.

h.     Defendants were aware that the quality of the Accused Products imported was far below the quality of genuine Stussy products, as reflected by the fact that the counterfeits were sold by Defendants for approximately 1/6 of the price of equivalent of genuine Stussy products.

i.     Upon information and belief, Defendants did not believe in good faith that their unauthorized use of the STUSSY Marks was lawful.

j.      Defendants posted publicly on their websites next to online listings for the Accused Products reviews by customers who had already purchased counterfeits, stating, "The shirt looks like a real one," essentially boasting about their infringing conduct. This counterfeiting activity and bragging occurred online, which effectively broadcasts Defendants' illegal behavior (and their ability to get away with it) to the whole world.

k.      Despite the obvious counterfeit nature of the Accused Products, Defendants continue to actively defend against the infringement claims, looking at litigation costs as merely the "cost of doing business."

l.      This is not an isolated incident or an isolated mistake by Shein where only one or two counterfeit types of goods were created and sold. On the contrary, Stussy is aware, to date, of approximately *twenty-one* different counterfeit styles (per mark, per type of good) produced by Defendants that match the goods listed in Stussy's federal trademark registrations, and *five* unique counterfeit styles (per mark, per type of good) produced by Defendants that match the goods listed in Stussy's California state trademark registrations. Upon information and belief, this was a deliberate business decision by Shein not to be careful about selling infringements and counterfeits.

m.      Defendants' goods are such that they have more than just a negative effect on the image of the STUSSY brand; Defendants' counterfeiting poses an existential threat to Stussy and the existence of its brand.

n.      Defendants have attempted to shield themselves from liability by creating numerous shell companies. A review of the Terms & Conditions contains on the US.SHEIN.COM website and their progeny over the years illustrates that Defendants change the "seller" of the Shein products every few years in order to limit their liability. The companies Defendants have used to sell in the United States include, without limitation, Shein Group Ltd., Shein Group UK Ltd., Roadget

/ / /

Business Pte. Ltd., Zoetop Business Ltd., and Shein Distribution Limited. Upon information and belief, most of these companies are shells, without offices.

o.    Defendants knew in March 2022 when this suit was originally filed, that Stussy was aware of only two infringing styles.  Defendants represented those were the only infringements. However, when Stussy discovered more infringements in June of 2022, Defendants finally acknowledged there were additional infringements not previously disclosed. In short, at a time Defendants were telling Stussy there were just two infringing products, Defendants knew there were *ten times* more infringing styles.

p.    Further, as described above, "Shein" has, by design, set up a corporate structure where Shein purposefully obfuscates jurisdiction and hides behind multiple shell companies to avoid being held liable in a U.S. Court.

108.   Defendants deliberately and willfully blinded themselves to facts that would put them on notice that they were infringing on the STUSSY Marks by, without limitation:

a.    either failing to have any effective procedures in place to prevent Defendants' sale of counterfeits, or failing altogether to attempt to verify the authenticity of the Accused Products;

b.    upon information and belief, suspecting wrongdoing but deliberately failing to investigate by knowing that counterfeiting is a major problem worldwide, especially in China where many of the Accused Products were sourced, but failing to take any affirmative action;

c.    failing to take the necessary steps to determine whether the Accused Products were counterfeit – such steps would not have been burdensome; on the contrary, it would have arguably taken approximately four seconds for one employee of Defendants to perform a Google search of the term "Stussy." Further, it would have taken one employee of Defendants to conduct a basic search of the USPTO records, which would have immediately returned numerous trademark

registrations both for the word STUSSY and the iconic stylized versions, as detailed above.

109.   Perhaps most crucially, the reasons the maximum statutory damages allowed should be awarded against Defendants is to act as a deterrent for its willful conduct. Defendants are repeat violators of intellectual property laws. Defendants do not deal responsibly when caught counterfeiting. "Shein" is a predatory company with a history of and reputation for knocking off famous designers and brands, both big and small. Shein appears to be operating with a business model wherein it is more cost effective and profitable to infringe first and ask questions later, then throw a small amount of money at the victim after the fact to make the problem go away. These business practices must be deterred. The Court cannot allow Shein to continue to be profitable by operating what is effectively a criminal operation. This is not a situation where Defendants operate only a single retail store of moderate scale wherein they are likely to be deterred by a moderate damages award. A company of Shein's size, equivalent to Amazon, needs the maximum amount of statutory damages awarded against it to deter future illegal conduct. Anything short of a full award of maximum statutory damages will fail to cause this $100 billion dollar company to flinch.

110.   Defendants are or will soon be one of the two largest clothing retailers in the world, yet "Shein" has not stopped selling infringements. Indeed, on information and belief, selling cheap knock-offs of famous brands is part of Shein's business model. In short, anything less than the maximum statutory award will not deter Shein's behavior. To put the monetary numbers in perspective, even if the Court were to award the maximum allowed, based on Defendants' most recent funding round valuing the company at $100 billion, even the maximum award would equate to between 0.00001% and 0.000001% of Defendants' worth. Even *with* a maximum award, there is concern that the "sting" of it may hardly be felt by Defendants.

111.   Finally, maximum statutory damages should be awarded against Defendants to act as a deterrent to any would-be counterfeiter, particularly foreign

entities who are watching closely and waiting to see if Shein can successfully avoid being held liable for its actions in the U.S. Unless the maximum statutory damages are awarded, the next new company will not be deterred from similar conduct, especially against smaller companies that cannot protect themselves from this type of piracy. A significant award against Defendants would send a message of deterrence to those would-be infringers. Stussy, therefore, seeks the maximum amount of statutory damages allowed under the law, but in no event less than two million dollars ($2,000,000) per trademark, per type of counterfeit good, for a total of forty-two million dollars ($42,000,000).

112.   Should Stussy elect statutory damages, it is also entitled to an award of its attorneys' fees because this case qualifies as exceptional under 15 U.S.C. § 1117(a); Defendants' conduct is and was malicious, fraudulent, deliberate, and/or willful.

## SECOND CLAIM FOR RELIEF

### (Against All Defendants for

### Federal Unfair Competition under 15 U.S.C. § 1125(a))

113.   Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

114.   Defendants' unauthorized use in commerce of spurious designations that are identical to or substantially indistinguishable from the STUSSY Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Stussy, or that Defendants are in some way affiliated with or sponsored by Stussy.

115.   Defendants' unauthorized use in commerce of spurious designations that are identical to or substantially indistinguishable from the STUSSY Marks as alleged

/ / /

herein constitutes use of a false designation of origin and misleading description and representation of fact.

116.  Defendants have made and will make false representations regarding Defendants' goods and services. As detailed above, Stussy alleges that there is a single Shein entity. In the alternative, Stussy avers that, if there is not a single "Shein" entity, then all of the other named and listed entities are making and/or recently made materially false and misleading representations in order to entice customers to do business with them by pretending to be "worldwide" and larger than each of those entities actually is. As such, each of the named and listed entities are making and/or recently made false and misleading representations of fact in order to mislead consumers, the press, the public, and the trier of fact in this lawsuit.

117.  Such representations were made and will be made in connection with commerce.

118.  Upon information and belief, Defendants' conduct as alleged herein is willful, as described in detail above, and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Stussy.

119.  Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

120.  Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Stussy, and to its goodwill and reputation, and will continue to both damage Stussy and confuse the public unless enjoined by this court. Stussy has no adequate remedy at law.

121.  Stussy is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

/ / /

### THIRD CLAIM FOR RELIEF

**(Against All Defendants for**

**Federal Trademark Dilution under 15 U.S.C. § 1125 (c))**

122.   Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

123.   The STUSSY Marks are distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

124.   The STUSSY Marks became distinctive and famous prior to the Defendants' acts as alleged herein.

125.   Defendants' acts alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the famous STUSSY Marks.

126.   Defendants' acts alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish the STUSSY Marks by undermining and damaging the valuable goodwill associated therewith.

127.   Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act and as further elaborated upon above, and have already caused Stussy irreparable damage and will, unless enjoined, continue to so damage Stussy, which has no adequate remedy at law.

128.   Stussy is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

/ / /

/ / /

/ / /

/ / /

/ / /

48

## FOURTH CLAIM FOR RELIEF

**(Against All Defendants for Infringement of a California Registered Trademarks and Counterfeiting (Cal. Bus. & Prof. Code §§ 14245, 14250))**

129.    Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

130.    Stussy is the owner of valid and enforceable trademarks registered with the State of California, as detailed above.

131.    As also detailed above, Defendants have used, without the consent of Stussy, reproductions, counterfeits, copies, and/or colorable imitations of the California Registered STUSSY Marks in connection with the sale, distribution, offering for sale, or advertising of goods or services, the use of which is likely to cause confusion or mistake, or to deceive, as to the source of origin of the goods or services.

132.    As detailed above, Defendants have reproduced, counterfeited, copied, and/or imitated Stussy's California Registered STUSSY Marks and applied the reproductions, counterfeits, copies, or colorable imitations to products, labels, signs, prints, packages, wrappers, receptacles, and/or advertisements intended to be used upon or in connection with the sale or other distribution in this state of goods or services. These described acts by Defendants have been committed with the knowledge that the marks are intended to be used to cause confusion or mistake, or to deceive.

133.    As detailed above, Defendants' have knowingly facilitated, enabled, and/or otherwise assisted in the manufacture, use, distribution, display, or sale of goods or services bearing reproductions, counterfeits, copies, and/or colorable imitations of Stussy's California Registered STUSSY Marks, without the consent of the Stussy.

/ / /

/ / /

134.   Defendant's acts have caused and, unless restrained by this Court, will continue to cause Stussy and the public to suffer great and irreparable damage and injury.

135.   Stussy has suffered loss of profits and other damage, and Defendants have earned and will earn illegal profits, as the result of Defendants' aforesaid acts. The infringing conduct should be enjoined. Stussy has no adequate remedy at law.

136.   Stussy is entitled to, among other relief, an award of monetary damages, up to three times Defendants' profits from, and up to three times all damages suffered by reason of, the wrongful manufacture, use, display, or sale of the Accused Products. Cal. Bus. & Prof. Code §14250(a). Stussy also is entitled to the destruction of goods, seizure of goods, an injunction, enhanced damages and profits, reasonable attorneys' fees, and costs of the action together with prejudgment and post-judgment interest.

## FIFTH CLAIM FOR RELIEF

### (Against All Defendants for California Common Law Trademark Infringement (Cal. Bus. & Prof. Code § 14259))

137.   Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

138.   Stussy is the owner of valid and enforceable trademarks registered with the State of California, as detailed above.

139.   Defendants have used, without the consent of Stussy, reproductions, counterfeits, copies, and/or colorable imitations of the STUSSY Marks in connection with the sale, distribution, offering for sale, or advertising of goods or services on or in connection with which the use is likely to cause confusion or mistake, or to deceive as to the source of origin of the goods or services.

140.   Defendants have acted with oppression, fraud and malice in that Defendants' conduct was intended by Defendants to cause injury to Stussy, is despicable and was carried on with a willful and conscious disregard of the rights of

Stussy and the public. Facts supporting these allegations of oppression, fraud and malice and a willful and conscious disregard of the rights of Stussy and the public are detailed above in Paragraphs 78 through 111. By reason of the foregoing, Stussy is entitled to exemplary or punitive damages on common law claims against Defendants, in an amount to be proven at trial.

141.  Defendant's acts have caused and, unless restrained by this Court, will continue to cause Stussy and the public to suffer great and irreparable damage and injury. Stussy has no adequate remedy at law.

142.  Stussy has suffered loss of profits and other damage, and Defendants have earned illegal profits as the result of Defendants' aforesaid acts. Stussy is entitled to the destruction of goods, seizure of goods, an injunction, enhanced damages and profits, punitive damages, reasonable attorneys' fees, and costs of the action together with prejudgment and post-judgment interest.

## SIXTH CLAIM FOR RELIEF

### (Against All Defendants for California Statutory Dilution
### (Cal. Bus. & Prof. Code § 14247))

143.  Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

144.  Stussy is the owner of the STUSSY Marks which are famous and distinctive.

145.  Defendants are using the STUSSY Marks, or colorable imitations and/or spurious designations with no indiscernible difference, without Stussy's consent.

146.  Defendants' use began after the STUSSY Marks became famous and distinctive.

147.  Defendants' acts alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the famous STUSSY Marks.

148.   Defendants' acts alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish the STUSSY Marks by undermining and damaging the valuable goodwill associated therewith.

149.   Defendants' actions are willful, as further elaborated upon above.

150.   Stussy is entitled to the destruction of goods, seizure of goods, an injunction, monetary damages up to three times Defendants' profits from, and up to three times all damages suffered by reason of, the wrongful manufacture, use, display, or sale of the Accused Products, enhanced damages and profits, reasonable attorneys' fees, and costs of the action together with prejudgment and post-judgment interest.

## SEVENTH CLAIM FOR RELIEF

### (Against All Defendants for California Unfair Competition and Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200-17208))

151.   Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

152.   Defendants have engaged in unfair and fraudulent business practices by the acts herein alleged. Stussy alleges, upon information and belief, that such acts will continue unless restrained by this Court.

153.   Defendants' acts have impaired Stussy's valuable goodwill, have created a likelihood of confusion, have actually confused the public and have otherwise adversely affected Stussy's business and reputation by use of unfair and fraudulent business practices in violation of the Cal. Bus. & Prof. Code, including, without limitation, §§ 17200 through 17208, and the common law.

154.   Defendants' acts have caused and, unless restrained by this Court, will continue to cause Stussy and the public to suffer great and irreparable damage and injury. Stussy has suffered loss of profits and other damages, and Defendants have earned illegal profits, as the result of Defendants' aforesaid acts. However, Stussy seeks only disgorgement of profits and does not seek damages at law.

155.   Stussy has no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**

**(Against All Defendants For Contributory Trademark Infringement)**

156.   Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

157.   Stussy is the owner of the STUSSY Marks, as detailed above.

158.   As detailed above, operators of the Shein websites and the Shein mobile apps are engaging in illegal conduct including but not necessarily limited to the promotion, advertisement, offer for sale, sale and distribution of counterfeit Stussy products in violation of the Lanham Act.

159.   To the extent Defendants are not one of the wrongful actors engaging in the operation of the Shein websites or the Shein mobile apps, Defendants intentionally induced the primary infringer(s) to infringe the STUSSY Marks. Defendants continued these activities in conjunction with others and/or each other who they knew or had reason to know were engaging in infringement of the STUSSY Marks.

160.   Defendants have actual knowledge of the illegal activities taking place on the Shein websites and the Shein mobile apps from, among other things, written notification by counsel and agents for Stussy.

161.   Defendants have deliberately disregarded these notifications and have otherwise consciously avoided learning about the full extent of illegal counterfeiting and infringing activities that are continuing on the Shein websites and the Shein mobile apps.

162.   Defendants have materially encouraged, enabled, and contributed to the infringing conduct on the Shein websites and the Shein mobile apps by, among other things, hosting the Shein websites and the Shein mobile apps, displaying offers for counterfeit products, and facilitating communications by and between the sellers of

/ / /

counterfeit goods over the Shein websites and the Shein mobile apps and their distributors, consumers and vendors.

163.   Upon information and belief, at no time did Defendants take any action in response to the infringement and counterfeiting and continued benefitting from the infringements.

164.   Defendants had the ability to take remedial measures such as removing infringing listings and/or making independent inquiries of whether the STUSSY Marks were owned by Stussy, but declined to take any such measures in response to learning about the infringement and counterfeiting.

165.   Defendants, therefore, bear contributory liability for the counterfeiting of the STUSSY Marks in violation of 15 U.S.C. § 1051, et seq. and the common law.

166.   Stussy has no adequate remedy at law and has suffered irreparable harm and damage as a result of the contributory counterfeiting conduct of the Defendants.

167.   Plaintiff has sustained damages as a result of the Defendants' wrongful contributory conduct in an amount to be ascertained at trial but in no event less than Two Million Dollars ($2,000,000) per trademark, per type of counterfeit good, for a total of forty-two million dollars ($42,000,000).

## NINTH CLAIM FOR RELIEF

### (Against All Defendants For Vicarious Trademark Infringement)

168.   Stussy incorporates herein by reference the averments of the preceding paragraphs as though fully set forth herein.

169.   The illegal sales of products that infringe on the STUSSY Marks have generated enormous sums of monies for Defendants.

170.   To the extent Defendants are not one of the wrongful actors engaging in the operation of the Shein websites or the Shein mobile apps, an agency relationship exists between Defendants and the direct infringer in that they are an actual or

/ / /

apparent partnership, they have authority to bind one another in transactions with third parties, and/or they have joint ownership or control over the infringing goods.

171.   The infringing conduct of offering for sale and selling the Accused Products on the Shein websites and the Shein mobile apps is within the scope of the agent's actual authority or ratified by Defendants.

172.   Despite the Defendants' duty and right to control the acts of their agent(s) in connection with the Shein websites and the Shein mobile apps, they have taken no steps to stop or otherwise prevent the ongoing counterfeiting, or to disconnect links directing its users to such websites and mobile apps.

173.   Defendants are, therefore, vicariously liable for the damages caused to Stussy as a result of their agents' illegal promotion, advertisement, offer for sale, and/or sale of counterfeit merchandise at the Shein websites and the Shein mobile apps in violation of 15 U.S.C. § 1051, et seq. and the common law

174.   Plaintiff has sustained damages as a result of the Defendants' wrongful vicarious conduct in an amount to be determined at trial but in no event less than Two Million Dollars ($2,000,000) per trademark, per type of counterfeit good, for a total of forty-two million dollars ($42,000,000).

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Stussy, Inc. prays for relief against each defendant, that:

A.   Each defendant, and each of its agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them, be temporarily, preliminarily and permanently enjoined and restrained from:

1.   Infringing the STUSSY Marks or using or causing the use of any word, term, name, symbol, device or combination thereof that causes or is likely to cause confusion, mistake or deception;

/ / /

2.     Using or causing the use of any word, term, name, symbol, device, or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation, origin or association of Defendants or Defendants' goods or services with Stussy, or using any false designation of origin or false or misleading description or representation of fact;

3.     Diluting or infringing the rights of Stussy in and to the STUSSY Marks or otherwise damaging Stussy's valuable goodwill or business reputation;

4.     Making any false or misleading statements as hereinabove alleged or otherwise; or

5.     Otherwise competing unfairly with Stussy in any manner.

B.     Defendants shall, under the supervision of the Court, or as may be verified by Stussy, destroy all infringing goods, and all molds, plates, and other materials involved with the manufacture of infringing goods.

C.     Defendants, within thirty days after the service of the judgment herein, be required to file with this Court and serve upon Stussy's attorneys a written report under oath setting forth in detail the manner in which Defendants have complied with the judgment.

D.     Stussy recovers its lost profits, actual damages and statutory damages (as provided by 15 U.S.C. § 1117), and exemplary or punitive damages on state law claims, in an amount to be proven at trial (except that restitution only, and not money damages, is requested in connection with the California statutory unfair competition claims), and in excess of $75,000, that each Defendant be required to account for any of its profits that are attributable to each Defendant's acts, and that all such lost profits and actual damages be trebled as provided by 15 U.S.C. § 1117 and Cal. Bus. & Prof. Code § 14340, or statutory damages, including interest thereon at the maximum rate provided by law.

E.      Stussy recovers its attorneys' fees.

F.      Stussy recovers its costs.

G.      The Court grant to Stussy such other and further relief as the Court deems just and proper.

Respectfully submitted,

KLEIN & WILSON

Dated:  October 25, 2022                    By: /s/ Gerald . Klein
                                                  Gerald A. Klein, P.C.
                                            Attorneys for Plaintiff STUSSY, INC.

# DEMAND FOR JURY TRIAL

Plaintiff Stussy, Inc. hereby demands trial by jury of all issues that are so triable.

Respectfully submitted,

KLEIN & WILSON

Dated:  October 25, 2022

By: */s/ Gerald . Klein*
Gerald A. Klein, P.C.
Attorneys for Plaintiff STUSSY, INC.